FAHRER, APPELLANT, *v.* FAHRER, APPELLEE.

(No. C-72427—Decided April 23, 1973.)

APPEAL: Court of Appeals for Hamilton County.

*Mr. Harry H. McIlwain,* for appellant.
*Messrs. Scherer, Schneider & Scherer,* for appellee.

SHANNON, J. This is an appeal from an order of the Court of Common Pleas of Hamilton County, division of domestic relations, modifying a decree of divorce.

This matter came before the court on a motion for a rule instructing defendant, the appellee herein, to show cause why he should not be held in contempt for failure to pay installments of alimony as provided in the decree of divorce dissolving the marriage of plaintiff, the appellant, and defendant. The parties agreed that the court should rule "in the manner of a Declaratory Judgment as to the present and future rights of the parties."

The parties filed a stipulation below and from it we have extracted certain essential facts. The marriage occurred in Cincinnati, Ohio, in 1943 and was dissolved in 1966. Prior to the decree, the parties entered into a separation agreement which was incorporated by reference into the decree. The defendant paid the sum of four hundred dollars per month to the plaintiff as alimony in accordance with the agreement and decree for approximately five years. In June 1971, defendant filed an affidavit in the cause in the court of common pleas stating that he had reasonable grounds to believe that the plaintiff had remarried, and he terminated the alimony payments.

After the divorce, plaintiff moved to Florida and began an association with one Roger C. Thayer. On December 17, 1970, she and Thayer applied for a marriage license in Forida and it was issued to them, but there is no record that a marriage ceremony was performed. However, both plaintiff and Thayer admit they booked passage on a steamship and occupied the same stateroom, and when they returned from the cruise took up residence in plaintiff's apartment. The name on the mailbox then was changed from J. L. Fahrer to Mr. and Mrs. Roger C. Thayer and, ultimately, to Roger C. and Jean L. Thayer. It is also admitted that they maintain joint savings and checking accounts, that each is the beneficiary of an insurance policy on the life of the other, and that they hold themselves out in the community where they live as man and wife. Further, it is stipulated that common-law marriage is not recognized in Florida.

The inquiry here must center upon the interpretation to be given Section 3 of the separation agreement, which provides:

"Husband shall pay to the Wife as alimony *for her support and maintenance* the sum of Four Hundred Dollars ($400.00) per month, commencing July 1, 1966, and continuing until Husband or Wife dies, or should Husband or Wife be divorced, *until Wife remarries.*" (Emphasis ours.)

Although the case of *Hunt* v. *Hunt,* 169 Ohio St. 276, is not, factually, on a par with the case before us, it does iterate basic principles upon which we must rely to resolve the issue here. At page 281 of the opinion in *Hunt, supra,* we find the following:

"The obligation of alimony was considered in the case of *Fickel* v *Granger,* 83 Ohio St. 101, 93 N. E. 527, 32 L. R. A. (N. S.), 270. Paragraph one of the syllabus there states:

" 'Alimony * * * is an award by the court upon considerations of equity and public policy and is founded upon the obligation, which grows out of the marriage relation, that the husband must support his wife, which obligation continues after legal separation without her fault.'

"In the case of *Friedman* v. *Schneider* (Supreme Court of Florida, 1951), 52 So. (2d). 420, it is stated in the opinion:

" 'True alimony, money required to be paid by a man to his former wife for her subsistence, derives from the legal duty to support her which he assumed when they married.' "

Unanimously, the court said that the true purpose of alimony is correctly stated in those cases.

Beginning on page 282 of the opinion, the court quoted with approval *Alsop* v. *Commissioner of Internal Revenue* (C. C. A. 3, 1937), 92 F. 2d 138, to this extent:

" 'Though it is generally stated that the remarriage of the wife does not automatically release the former husband from the duty of supporting her (19 C. J. 625), her remarriage is almost universally held to be sufficient grounds for an order suspending or abrogating further pay-

ments of alimony upon application therefor by the former husband. * * * (Citing many authorities.)

" ' * * *It has been held that "good public policy would not compel a divorced husband to support his former wife after she has become another man's wife, except under extraordinary conditions, which she should be required to prove," and that "the cases wherein the alimony should be continued after the remarriage are extremely rare and exceptional." ' "

In Ohio, the elements essential to the establishment of a common-law marriage are: "(1) a mutual agreement to marry in praesenti, made by parties competent to marry; (2) accompanied and followed by cohabitation as husband and wife; (3) a holding of themselves out as husband and wife in the community in which they move; and (4) being regarded as husband and wife in the community in which they move." 35 Ohio Jurisprudence 2d 516, 517, Marriage, Section 22.

The evidence set forth in the stipulation and the several depositions is such as to leave no doubt in our minds that the relationship between the plaintiff and Roger C. Thayer constitutes a common-law marriage under the law of Ohio. Further, we are convinced that when the parties entered into the separation agreement and when it became part of the decree of divorce, the intent of the parties was that "remarry" should mean remarry in a manner which would result in a marriage considered valid in Ohio.

It is significant that in her deposition the plaintiff, when asked why she and Thayer applied for a marriage license but claimed not to have had a marriage ceremony performed, said:

"Q. Well, the only reason then you didn't go ahead and have the ceremony performed was that you could continue to collect the $400 alimony?

"A. Because I couldn't continue. I'd have to give up the alimony and everything else.

"Q. That was the reason, wasn't it?

"A. Oh, well, sure, yeah, yeah."

In the case of *Dailey* v. *Dailey*, 171 Ohio St. 133, the

Supreme Court distinguished *Hunt, supra,* from the case before it, but quoted, at 134, the first paragraph of its syllabus.

We have determined that although *Hunt, supra,* and *Dailey, supra,* do not present precisely the same problem as that before us, the fundamental principles enunciated in those cases control us.

We hold that the plaintiff has entered into a relationship with a man which if maintained in Ohio would constitute a valid marriage and, therefore, she must be said to have remarried within the meaning of the agreement made part of the decree.

Further, we hold that the public policy as established by the Supreme Court has not changed and the conclusion is inescapable that the marriage to a man whom we must, from the record, presume to be capable of supporting her constitutes an election on the part of the plaintiff to be supported by that new husband and an abandonment of the provision for alimony from the defendant. We quote, again, from Hunt, at page 288, as follows:

"A contrary decision would result in what might well be described as: quasi-polygamy by court order."

The court below, in modifying the decree by terminating the alimony, did not modify a contractual agreement between the parties but did interpret the decree of divorce properly in light of the evidence and established law and public policy of this state. Therefore, the plaintiff-appellant's assignment of error is not well taken and the judgment of the Court of Common Pleas of Hamilton County, division of domestic relations, is affirmed.

*Judgment affirmed.*

Hess, P. J., and Palmer, J., concur.